UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN D. BRUGOS, *et al.*, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| vs. ) | CAUSE NO. 2:03-CV-547 RM |
| ) | |
| GERRY NANNENGA, *et al.*, ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Peter Manous moves for dismissal of certain claims asserted against him for failure to state a claim against which relief can be granted. FED. R. CIV. P. 12(b)6. The motion is ripe for ruling.[1] For the following reasons, the court grants the motion in part and denies it in part.

Mr. Manous served either as an attorney or advisor of the Pension Plan and as an undisclosed agent or attorney for Lake Erie Land. Mr. Manous pleaded guilty to eight crimes related to his actions in connection with the Coffee Creek Investment and was sentenced to more than two years' incarceration.

Mr. Manous attacks the third amended complaint brought by John Brugos and Douglas Robinson, solely in their capacities as fiduciaries and members of the Board of Trustees of the Indiana Regional Council of Carpenters Pension Trust Fund a/k/a the Northwest Indiana Regional Council of Carpenters Pension Trust

---

[1] The plaintiffs' response appears to be in violation of N.D. IND. L.R. 5.2(a), which requires the response to be double-spaced. When converted to a double-spaced document, the response would violate N.D. IND. L.R. 7.1(d), which requires responses that would exceed 25 pages to be filed only with leave of court. Future violations of these rules will result in the court disregarding any pages exceeding the limit allowed by local rule or leave of the court.

Fund ("the Pension Fund"), the Pension Fund, and Builders and Carpenters, LLC. The Board of Trustees and the Pension Fund created Builders and Carpenters, LLC, an Indiana Limited Liability Company, to act as the owner, developer, and operator of the Coffee Creek Investment.

Because the third amended complaint effectively subsumes all previous complaints, the court refers to it simply as the complaint. All claims pleaded in the complaint appear to stem from the Pension Fund's involvement in the Coffee Creek Investment — land that was originally part of the Coffee Creek Center, a 640-acre residential and commercial development in Chesterton, Indiana owned principally by Lake Erie Land. The specifics surrounding the actual purchase of the Coffee Creek Investment are complex and detailed extensively in the complaint, and for the purposes of the motions before the court, the complaint's recitation of these specifics serve as the underlying facts for the court's analysis of the issues.

> Complaints initiate the litigation but need not cover everything necessary for the plaintiff to win; factual details and legal arguments come later. A complaint suffices if any facts consistent with its allegations, and showing entitlement to prevail, could be established by affidavit or testimony at trial. The consistency proviso is why some complaints may be dismissed pronto: litigants may plead themselves out of court by alleging facts that defeat recovery.

Doe v. Smith, ---F.3d----, 2005 WL 3099687 at *1 (7th Cir. Nov. 21, 2005) (quotations and citations omitted). A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint, not its underlying merits, *see* Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990), and the court must accept all

2

factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiffs. Slaney v. Int'l Amateur Athletic Fed'n., 244 F.3d 580, 597 (7th Cir. 2001). Dismissal under Rule 12(b)(6) is proper only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief, Szumny v. American Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001), and the defendant bears the burden of showing the plaintiff has either pleaded facts that show he is not entitled to relief or failed to allege a claim upon which relief can be granted. Doe v. Smith, ---F.3d----, 2005 WL 3099687 at *1; Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

Mr. Manous seeks dismissal of counts VIII (legal malpractice), IX (breach of fiduciary duty), XI (unjust enrichment), XII (Indiana Crime Victims' Relief Act, "ICVRA" claims), XVI (Indiana Securities Act), and XVII (common law fraud) on the grounds that they are preempted by the Employee Income Retirement Security Act (ERISA) 29 U.S.C. § 1001, *et seq*. He also moves the court to dismiss counts XIII (Racketeer Influenced and Corrupt Organizations Act, "RICO") and (Indiana Racketeer Influenced and Corrupt Organizations Act, "IRICO") , XIV (same) , XVI (Indiana Securities Act), and XVII (common law fraud) because of various perceived pleading deficiencies.

First, Mr. Manous asserts the "conflict preemption" defense provided for in ERISA against all the state law claims brought against him. When faced with a such an assertion under ERISA:

3

> [t]he statute provides the starting point for [the court's] analysis. Section 514(a) [29 U.S.C. § 1144(a)] says that ERISA shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. The trick, as the Court explained in <u>New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.</u>, 514 U.S. 645 (1995), is to determine how close a relation the state law must have to the plan. In <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85 (1983), the Court held that [a] law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. It went on to stress that ERISA does not preempt only state laws specifically designed to affect employee benefit plans, or only state laws dealing with the subject matters covered by ERISA. Instead, as the Court reiterated later in <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200 (2004), ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plans regulation would be exclusively a federal concern.

<u>McDonald v. Household Int., Inc.</u>, 425 F.3d 424, 428 (7th Cir. 2005) (quotations, citations, and parallel citations omitted).

> Congress enacted ERISA to protect … the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts. . . . ERISA's comprehensive legislative scheme includes an integrated system of procedures for enforcement. This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1332(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans. . . . Therefore, any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.

<u>Aenta Health Inc., et al v. Davila</u>, 542 U.S. 200, 208-209 (2004) (citations and quotations omitted).

While ERISA's preemption provisions are expansive, the party asserting the preemption defense "bear[s] the considerable burden of overcoming the starting

presumption that Congress does not intend to supplant state law." De Buono v. NYSA-ILA Med. and Clinical Servs. Fund, 520 U.S. 806, 814 (1997) (quotations and citations omitted). This is especially true for areas traditionally left to the states for regulation. Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d 765, 775 (7th Cir. 2002). For the court to determine "whether the normal presumption against pre-emption has been overcome in a particular case, [the court] must go beyond the unhelpful text and the frustrating difficulty of defining its key term," De Buono v. NYSA-ILA Med. and Clinical Servs. Fund, 520 U.S. 806, 813-14 (1997) (quotations and citations omitted), and " look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA plans." Egelhoff v. Egelhoff, 532 U.S. 141, 147 (1997)(quotations and citations omitted); *see also* Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d at 776, n.8 ("we join the First Circuit in concluding that when the nexus between a state law and ERISA is less than clear, federal courts are required to evaluate the law in light of ERISA's statutory objectives — regardless of which category of preemption the state law might fall under.").

     In short, the court must decide whether the state law claims brought against Mr. Manous are of the sort Congress intended to supplant when it passed ERISA, and also what effect the law upon which these claims are brought has on ERISA plans, all the while keeping in mind ERISA's stated objectives:

> to protect . . . the interests of participants . . . and their beneficiaries, by requiring the disclosure and reporting . . . of financial and other information . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions and ready access to the Federal courts . . . and by improving the equitable character and soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring termination insurance.

Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d at 774 (quoting 29 U.S.C. § 1001(b)-(c))(quotations and citations omitted).

Both parties say Biondi supports their respective positions. In Biondi, the trustees of a health insurance fund brought similar ERISA and state law claims against a participant of the fund alleging he intentionally misrepresented his marital status to secure future benefits for his ex-wife. Before analyzing whether the state law claims were preempted, the court of appeals reiterated that:

> the Supreme Court has identified at least three instances where a state law can be said to have a connection with or reference to employee benefit plans, when it (1) mandates employee benefit structures or their administration, (2) binds employers or plan administrators to particular choices or precludes uniform administration practice, thereby functioning as a regulation of an ERISA plan itself, and (3) provides an alternate enforcement mechanism to ERISA.

Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d at 775. After comparing the trustees' claims with the Supreme Court's three instances, the court of appeals concluded the defendant hadn't carried his burden to prove the trustees' state law claims fell into one of three categories, and thus found ERISA did not preempt the claims. Mr. Manous argues that unlike the claims in Biondi, the

6

plaintiffs' state law claims are impermissible alternative enforcement mechanisms to ERISA.[2]

Mr. Manous argues that the plaintiffs' common law breach of fiduciary duty claim is identical to the ERISA breach of fiduciary duty claim, and is premised on the same facts. As explicitly stated in the complaint, the claim arises from Mr. Manous' breach of his fiduciary duties owed to the Pension Fund as the Pension Fund's lawyer and advisor. When an ERISA plan (or any party authorized by 29 U.S.C. § 1132 to execute a suit on behalf such plan) alleges that its fiduciaries breached an owed duty, 29 U.S.C. §§ 1104 and 1109 delineate the only possible claims and remedies, as shown by ERISA's objective to "establish[] standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and . . . provid[e] for appropriate remedies, sanctions and ready access to the Federal courts." 29 U.S.C. § 1001(b). To allow a common law breach of fiduciary duty claim arising from these facts would conflict with this objective.

Moreover, the only difference between count VI, which alleges a breach of fiduciary duty under ERISA, and claim IX, which alleges a breach of common law fiduciary duty, is the requested remedy of punitive damages. This, too, conflicts with Congress' objectives when it enacted ERISA, as "[t]he limited remedies available under ERISA are an inherent part of the careful balancing between

---

[2] While the parties disagree as to whether the three instances identified in <u>Biondi</u> are exhaustive of the only three instances where preemption is proper under 29 U.S.C. § 1144, the court needn't resolve that issue. Mr. Manous crafts his arguments in terms of this third instance articulated <u>Biondi</u>.

ensuring a fair and prompt enforcement of rights." Aenta Health Inc., et al v. Davila, 542 U.S. at 215 (quotations and citations omitted). To allow an identical common law claim, premised on identically pleaded facts, and seemingly pleaded only to supplement the ERISA remedies available would undermine "Congress' intent to make the ERISA civil enforcement mechanism exclusive." Id. at 216. Based on the plaintiffs' pleaded facts, the common law breach of fiduciary duty claim against Mr. Manous is preempted because it offends Congress' intent to create an exclusive remedy in 29 U.S.C. §§ 1104 and 1109 (as asserted under 29 U.S.C. § 1132(a)(2).[3]

Mr. Manous asks this court to find ERISA preempts the plaintiffs' Indiana Securities Act claim. ERISA explicitly allows state law claims founded in the regulation of securities. 29 U.S.C. § 1144(b)(2)(A). Whether the plaintiffs have pleaded the requisite facts under this claim is addressed below, but the claim is not preempted.

Mr. Manous argues the remaining state law claims: unjust enrichment; professional malpractice; common law fraud; and any claim brought under the Indiana Crimes Victim's Relief Act; all fall within the heart of ERISA regulation because an ERISA plan was the alleged victim and the remedies sought conflict with ERISA's exclusive enforcement scheme. Mr. Manous, though, has not cited

---

[3] Because Count X necessarily relies on the existence of Count IX, that too is dismissed. The ERISA counterparts to these claims are already pleaded in Count VI and Count VII, so there seems no need to follow the traditional route of dismissing the claim without prejudice and granting the plaintiff leave to amend the complaint with an appropriate ERISA claim.

any law that *per se* renders these claims preempted by ERISA. Moreover, there exists facts the plaintiffs could prove that would entitle them to relief. Thus, preemption analysis would be premature and improper at this stage, as would dismissal for this reason under Rule 12(b)(6).

Alternatively, Mr. Manous seeks dismissal of certain claims based on various pleading deficiencies. He says the plaintiffs did not adequately plead their professional malpractice, unjust enrichment, RICO, IRICO, Indiana Securities Act, and common law fraud claims.

Mr. Manous attacks both the professional malpractice and unjust enrichment claims because they lack the requisite facts or elements needed to prevail. Rule 8 does not require a complaint include "the facts or the elements of a claim." Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002); *see also* FED. R. CIV. P. 8(a)(2). Thus, these claims stand.

Mr. Manous also attacks the claims under RICO, 18 U.S.C. § 1962(c) and (d), and IRICO IND. CODE § 35-45-6-2, asserting the plaintiffs failed to allege a pattern of racketeering activity sufficient to support either claim. Because the IRICO statue was patterned after the federal RICO statute, Yoder Grain, Inc. v. Antalis, 722 N.E.2d 840, 845 (Ind. App. 2000), the court analyzes their alleged deficiencies jointly.

> A RICO plaintiff alleging a violation of § 1962(c) must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity . . . [and] the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to the allegations of fraud in a civil RICO complaint. Therefore, to plead adequately a pattern of racketeering

9

> activity, a plaintiff must allege with particularity two predicate acts. The complaint must be specific with respect to the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations.

Lachmund v. ADM Investor Servs., Inc., 191 F.3d 777, 784 (7th Cir. 1999) (quotations and citations omitted).

> To state a claim for conspiracy under § 1962(d), a plaintiff must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. The complaint need not allege that each defendant agreed personally to commit two predicate acts but rather need only allege that each defendant agreed to participate in an endeavor which, if completed, would constitute a violation of RICO.

Id. (quotations and citations omitted).

Mr. Manous argues the complaint lacks the particular facts needed to establish a pattern of racketeering activity. Such a pattern is required whether a RICO claim is pleaded under 18 U.S.C. § 1926(c) or (d).

> [t]he Supreme Court long ago made clear that the statutory definition of a pattern--two racketeering acts within ten years--did not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern. To establish a pattern of racketeering activity, a plaintiff must show continued criminal activity (or the threat thereof) and relationship between the predicate acts--a standard commonly dubbed the continuity plus relationship test.
> 
> * * *
> 
> As the Court has noted, continuity is both a closed- and open-ended concept. As its name suggests, a closed period of racketeering activity involves a course of criminal conduct that has ended. A plaintiff may demonstrate a closed period of continuity by proving a series of related predicates extending over a substantial period of time. On the

10

> other hand, an open-ended period of racketeering is a course of criminal conduct that lacks the duration and repetition to establish continuity. A plaintiff may nevertheless satisfy continuity by showing past conduct that by its nature projects into the future with a threat of repetition. To summarize, a RICO plaintiff can satisfy the continuity prong either by (1) demonstrating a close-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future.

Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill., 424 F.3d 659, 672-73 (7th Cir. 2005) (citations and quotations omitted).

Mr. Manous doesn't argue that the predicate acts lack the needed relationship. He focuses instead on the continuity prong. Courts analyze allegations of continuity using "a multifactor test, in which [the court] consider[s] (1) the number and variety of predicate acts and the length of time over which they were committed, (2) the number of victims, (3) the presence of separate schemes, and (4) the occurrence of distinct injuries." Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill., 424 F.3d at 673. "No one factor is dispositive of a claim. Rather, . . . analysis of the continuity prong is fact-specific and undertaken with the goal of achieving a natural and commonsense result, consistent with Congress' concern with long-term criminal conduct." Id. (quotations and citations omitted).

The plaintiffs identify several predicate acts of varying type, and note they all occurred within in a finite time frame of five years. While courts have hesitated to find several years long enough to satisfy the continuity requirement, there is no established benchmark time frame that is sufficient. *See* Roger Whitmore's Auto.

Servs., Inc. v. Lake County, Ill., 424 F.3d at 673. This factor, then, weighs slightly in the plaintiffs' favor.

The parties identify the Pension Fund (and potentially two other pension funds) as the only victim(s), but the court is not entirely comfortable with assuming the damage is to the Pension Fund alone and not to its beneficiaries and participants. At this stage, the actual amount of damage cannot (and must not) be determined; the alleged amount of loss (more than $5 million) is taken as true, so the Pension Fund's participants and beneficiaries might turn out to be the true victims of the purported scheme. Given the vast amount of participants and beneficiaries, at this stage this factor weighs heavily in favor of the plaintiffs.

The parties disagree on the number of schemes involved. Mr. Manous argues that however one reads the complaint, the facts support only one scheme with one intended result—to influence the Pension Fund to purchase the Coffee Creek Investment and to financially benefit from the sale. The plaintiffs argue the complaint identifies at least two schemes—the initial scheme to influence the Pension Fund to purchase the Coffee Creek Investment, and the subsequent scheme to cover it up when the Department of Labor began its investigation.

While arguing the first factor (that the predicate acts of the schemes occurred over a sufficiently long time frame), the plaintiffs identify the duration of the alleged schemes as lasting five years. Yet, when arguing this third factor, the Pension Fund sees two separate schemes, with first (influencing the Pension Fund to purchase the Coffee Creek Investment) beginning in 1998 and ending in

12

2000, and the second (the cover-up) beginning in 2000 and lasting, at the most, until 2003. The Pension Fund cannot have it both ways, so the court finds only one scheme pleaded in the complaint. This factor weighs strongly in favor of Mr. Manous.

Finally, the court is to look at the occurrence of distinct injuries inflicted by the alleged activity. Mr. Manous identifies a single alleged injury to the Pension Fund as the sole purchaser of the land. As the plaintiffs identify, though, there were at least two distinct categories of injury even if there is only one scheme: the first occurred when Mr. Manous influenced the Pension Fund to purchase the Coffee Creek Investment, and the second when the Pension Fund incurred substantial losses resulting from the concealment of the scheme. This factor weighs in favor of the Pension Fund.

When all the factors are weighed, the scale tips in favor of the plaintiffs having sufficiently pleaded their RICO and IRICO claims. "[A]nalysis of the continuity prong is fact-specific," Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill., 424 F.3d at 673, though, and at this procedural stage, the court could look only to the complaint and draw all reasonable inferences in favor of the plaintiff. Facts on which Mr. Manous relies might provide the grounds for success at summary judgment or trial, but they cannot provide the reason to dismiss the claims now. Whether the plaintiffs can succeed on their claims is not today's issue—it is enough that they have comported with the pleading requirements of the law.

13

Mr. Manous also argues the Indiana Securities Act claim should be dismissed. However, the complaint identifies the existence of an investment contract that gives rise to the alleged liability referred to in count XVI. The Indiana Securities Act includes "investment contract" in its definition of "security." IND. CODE § 23-2-1-1(k). If the plaintiffs prove the existence of this investment contract, and show it was offered and sold in violation of the Indiana Securities Act, the plaintiffs would be entitled to relief.

Finally, Mr. Manous argues the complaint fails to allege the common law fraud claim against him with the required specificity. He points to the language contained in count XVII itself to highlight the broad language in which the plaintiffs allege the fraud. The Pension Fund responds by highlighting other language contained in the complaint that it contends satisfies the pleading requirements.

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). To survive a Rule 12(b)(6) motion to dismiss, a fraud claim "must plead the who, what, when, and where of the alleged fraud." Lachmund v. ADM Investor Servs., Inc., 191 F.3d at 782 (quotations and citations omitted).

Mr. Manous says neither the fraud claim itself, nor the identified paragraphs by the Pension Fund satisfy the heightened pleading standard. When the court considers all the specific allegations contained in the complaint, though, the complaint adequately alleges the who, what, when, and where of the alleged

14

fraud asserted against Mr. Manous. While "[t]he particulars of the charge of fraud would be easier to grasp if the acts, the times, the concealment, and a single defendant were placed in a single paragraph . . . [so] long as those data are somewhere in the complaint – and they are – Rule 9(b) is satisfied." Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co., 412 F.3d 745, 749 (7th Cir. 2005).

For these reasons, the court GRANTS Peter Manous' motion to dismiss as to count IX and count X, both of which shall be dismissed with prejudice, and DENIES the motion as to the remaining counts [Doc. No. 153].

SO ORDERED.

ENTERED:   December 5, 2005

　　　　　　　　　　　　　　　　　　　　/s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court