UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN BRUGOS, et al., | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) CAUSE NO.2:03-CV-547 RM |
| | ) |
| GERRY NANNENGA, et al., | ) |
| | ) |
| Defendants | ) |

OPINION and ORDER

Plaintiffs John D. Brugos and Douglas Robinson, in their capacities as fiduciaries of the Indiana Regional Council of Carpenters Pension Trust and Builders and Carpenters, LLC., filed suit against defendants Gerry Nannenga, Peter Manous, Kevin Pastrick, Carl Paul Ihle, Jr., Deborah Nannenga, Sand Creek Sales & Development Inc., Lake Erie Land Co., James Bohlen, and Robert Novak in connection with their actions and/or omissions in causing the Pension Fund to invest $10 million in a residential and commercial development known as Coffee Creek Center.  Lake Erie Land filed a counterclaim alleging breach of contract and fraud by the plaintiffs in regards to this investment, as well as asking the court to setoff a $4.5 million insurance settlement received by the Pension Fund against any amounts that the plaintiffs might recover from Lake Erie Land. After discovery closed, the Pension Fund and Builders and Carpenters separately moved for summary judgment on the counterclaims. For the reasons set forth

below, their motions for summary judgment are granted in part and denied in part.

I. FACTUAL BACKGROUND

The facts of this case are complex and heatedly contested, so the court attempts only a skeletal account of the events that give rise to this counterclaim. The Indiana Regional Council of Carpenters Pension Trust Fund purchased land in Coffee Creek Center through Builders and Carpenters, LLC, an entity created solely for this transaction whose sole member is the Pension Fund. Coffee Creek Center is a 640-acre residential and commercial development in northwest Indiana owned principally by Lake Erie Land Company. In the "Investment Representations" portion of the land contract, Builders and Carpenters as purchaser promised that it:

> is buying the Property for final development by itself, its designees or assignees, including, without limitation, homebuilders or other developers;
>
> is buying the Property for its own account and resales of portions of the Property will be to end-users, homebuilders, or other developers;
>
> is capable of evaluating the merits and risk of purchasing the Property;
>
> has secured independent professional advice with respect to the transaction contemplated herein, upon which Purchaser is relying;
>
> has relied upon the documents submitted to it and independent investigations made by Purchaser and its professional advisors in making the decision to purchase the Property as contemplated herein.

These representations, according to Lake Erie, served to ensure that the purchaser was purchasing the property for the purpose of final development by the purchaser or its assigns instead of relying on Lake Erie to do the work, and also ensured that the purchaser was capable of evaluating the merits and risks of the purchase. Lake Erie contends that this was essential since Morgan's Creek, one of the parcels Builders and Carpenters acquired, was intended to provide a start for development in Coffee Creek Center.

Lake Erie alleges that Builders and Carpenters and the Pension Fund didn't live up to their investment representations. According to Lake Erie, it wasn't until more than a year after the sale that Builders and Carpenters took any visible steps to engage a development partner, Calumet Management, and then they succeeded in building only one house and the shells of four others before the relationship ended. Since then, Builders and Carpenters, as the Pension Fund's agent, has not taken even the most rudimentary actions to manage the property effectively, much less to develop it. Instead of hiring a qualified manager to oversee development, Builders and Carpenters placed principal responsibility for management in the hands of Trustee Bohlen, who already had a full-time job. Neither Builders and Carpenters nor the Pension Fund provided development funds. Lake Erie alleges that this failure to develop the land was directly attributable to Builders and Carpenters' and the Pension Fund's misrepresentations of their intent and ability to develop the property, not seeking the appropriate professional advice, and not relying upon the advice they did

3

receive. Builders and Carpenters seeks summary judgment on both the breach of contract and fraud counterclaims. The Pension Fund moves for summary judgment on those counterclaims as well as Lake Erie's counterclaim for setoff.

## II. DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on the mere allegations or denials contained in its pleading to overcome a motion for summary judgment. The nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986).

Builders and Carpenters and the Pension Fund contend that Lake Erie's contract counterclaim, which arises out of representations contained in the

4

parties' 1999 purchase agreement, is time-barred by section 21.1 of the agreement. Indiana law provides a ten-year limitations period on contract claims, IND. CODE § 34-11-2-11, but the Pension Fund and Builders and Carpenters argue that the contract provides for a shorter limitations period of three years. Section 21.1 states:

> All representations, warranties, agreements, indemnifications and obligations of the parties shall, notwithstanding any investigation made by any party hereto, survive the Closing (except that survival of the representations and warranties and indemnifications related thereto shall be limited to a period of three years following the Closing) and the same shall inure to the benefit of and be binding on the respective successors and assigns of the parties...

Courts in this circuit have enforced such contractual limitations periods. "Where parties mutually agree to a contractual limitations period shorter than that imposed by state law, the court will enforce the provision." Latek v. LeaseAmerica Corp., 1992 WL 170546, *3 (N.D. Ill. 1992). *See also* Madge v. Rod O'Kelley, Inc., 855 N.E.2d 712, 714 (Ind. App. 2006) (*quoting* New Welton Homes v. Eckman, 830 N.E.2d 32, 35 (Ind. 2005)) ("Indiana law generally holds that contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded.")

Lake Erie contends that Builders and Carpenters and the Pension Fund misinterpret the parenthetical phrase. Lake Erie asserts that the three-year limitations period doesn't apply to the survival of representations and warranties generally, but only to claims for indemnity premised upon those contractual promises. Lake Erie points to the last sentence, which notes:

5

> Notwithstanding anything contained in this Section to the Contrary, any claim for indemnification as to which proper notice from the party seeking indemnification has been given prior to the expiration of the three year period to the party against whom indemnification is sought shall survive until such claim has been resolved.

According to Lake Erie, since this line contains no reference to claims for breaches of representations or warranties the three-year time frame must only apply to indemnification.

Lake Erie also points to the history of the clause in support of its interpretation. The parenthetical phrase was not included in that paragraph initially, and it wasn't drafted until after more language was added regarding indemnification. If a clause is unambiguous, however, a court is not to look at the parol evidence. "If a district court determines that the pertinent provisions of the contract are unambiguous, it need not consider extrinsic evidence." Ryan v. Chromalloy American Corp., 877 F.2d 598, 602 (7th Cir. 1989). The parenthetical phrase's effect is clear and unambiguous: a party may only bring suit premised on representations and warranties and indemnifications contained in the contract within three years of the closing. Had the parties wished to limit only the period for indemnifications they wouldn't have included the other two words, "except that survival of the representations and warranties and indemnifications related thereto", and instead would have stated "survival of the indemnifications".

The way the parenthetical is phrased precludes any finding other than that the contractual limitations period included claims premised on representations and warranties. The closing on the Coffee Creek Center property occurred on

6

March 1, 1999, so suit alleging misrepresentations must have been brought by March 1, 2002. Lake Erie did not file its contract counterclaim until January 4, 2006.

Lake Erie also cites Indiana Trial Rule 13(J), which states that the statute of limitations shall not bar a counterclaim to the extent that it diminishes or defeats the opposing party's claim if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim, or if it could have been asserted as a counterclaim to the opposing party's claim before it was barred. The Indiana Trial Rule, however, is a state procedural rule not applicable in federal court.

> Rather than being a tolling provision which Johnson indicates should be adopted under certain circumstances with the state statute of limitations, Indiana Trial Rule 13(J)(1) is really an Indiana procedural rule, which is obvious from the fact it is contained in the Indiana Trial Rules. It is elementary that federal procedure controls in federal courts.

Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135 v. Jefferson Trucking Co., Inc., 473 F.Supp. 1255, 1258 (S.D. Ind. 1979).

Lastly, Lake Erie argues that the contractual limitations period should not be applied under the doctrine of equitable estoppel. Lake Erie alleges that Builders and Carpenters and the Pension Fund waited until after the limitations period passed before filing a suit in which they assert, for the first time, that the contractual representations forming the basis of Lake Erie's claims were untrue at the time they were made. In support Lake Erie cites to Little v. Progressive Ins.,

7

783 N.E.2d 307, 315 (Ind.App. 2003). "The doctrine of equitable estoppel will be invoked 'if one party through his course of conduct knowingly misleads or induces another party to believe and act upon his conduct in good faith without knowledge of the facts'." (*quoting* Levin v. Levin, 645 N.E.2d 601 , 604 (Ind. 1994)). The Little court went on say, "Rather, the person's conduct must merely have been sufficient to prevent inquiry, to elude investigation, or to mislead and hinder." Little v. Progressive Ins., 783 N.E.2d at 315.

Lake Erie says Builders and Carpenters and the Pension Fund were not making any progress towards developing the land within one year of purchasing it. Lake Erie was on notice and should have filed suit within the limitations period. Although the Pension Fund is not a direct party to the contract, the contractual limitations period applies to all claims arising out of the contractual representations. The motions of Builders and Carpenters and the Pension Fund for summary judgment on Lake Erie's breach of contract claim are granted.

The Pension Fund and Builders and Carpenters also seek summary judgment on Lake Erie's fraud claim on the basis that a party cannot pursue a fraud claim on the same basis as its claim for breach of contract. A party can bring a breach of contract claim along with a claim for fraud if that party can show that the elements of fraud are met and that it suffered an injury different from that of the breach: "a claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that

8

resulting from the breach." America's Directories, Inc. v. Stellhorn One Hour Photo, Inc., 833 N.E.2d 1059, 1067 (Ind. App. 2005) (*quoting* Epperly v. Johnson, 734 N.E.2d 1066, 1073 (Ind. App. 2000)). To sustain a claim for fraud, the following elements must be fulfilled: 1) a material misrepresentation of past or existing fact; 2) made with knowledge or reckless ignorance of falsity; 3) causing the claimaint to rely upon the misrepresentation to the claimant's detriment. America's Directories, Inc. v. Stellhorn One Hour Photo, Inc., 833 N.E.2d at 1067.

Lake Erie claims that the Pension Fund and Builders and Carpenters made misrepresentations about their intent to develop the property, their ability to assess the risk involved, and their reliance on professional advice. These representations were untrue, Lake Erie says, were known to be untrue at the time that they were made, and were expressly made to induce Lake Erie's entry into the agreement and performance of its obligations and were successful in doing so. In support of these allegations, Lake Erie points to the Deposition of Alan Biller, the expert for the Pension Fund and Builders and Carpenters on fiduciary issues, who stated that the trustees failed to obtain and heed expert advice regarding this transaction. Lake Erie also points to board minutes produced by the Pension Fund in discovery that reveal that it was never the intention of the Pension Fund or Builders and Carpenters to make any investment in developing the land but instead simply to sell the lots outright. The showing made by Lake Erie is enough to survive summary judgment.

The Pension Fund argues that it cannot be held liable on a claim for fraud because it was not a party to the contract. Lake Erie responds that Builders and Carpenters was the Pension Fund's agent and that misrepresentations were made on the part of the Pension Fund that induced Lake Erie into a final agreement rather than pursuing other opportunities. Additionally, although the Pension Fund is not a party to the contract, it is a party to the suit against Lake Erie for fraud based on the contract at issue. Therefore, the court denies the motions of Builders and Carpenters and the Pension Fund for summary judgment on Lake Erie's fraud counterclaim.

Lake Erie says it intends to argue for a setoff or other reduction of the Pension Fund's compensatory damages in the amount of the $4.5 million that the Pension Fund received as part of an insurance payout. The Pension Fund paid premiums to ULICO for a policy covering its Trustees, then received a payout as settlement of claims the Pension Fund brought against the Trustees in this suit. The Pension Fund asks the court to prohibit Lake Erie from introducing such evidence pursuant to the collateral source rule, which prohibits "defendants from introducing evidence of compensation received by plaintiffs from collateral sources, i.e., sources other than the defendant, to reduce damage awards." Shirley v. Russell, 663 N.E.2d 532, 534 (Ind. 1996). A joint tortfeasor is not a collateral source. Manns v. State Department of Highways, 541 N.E.2d 929, 934 (Ind. 1989). However, evidence of partial settlement agreements should not be introduced as evidence at trial; instead the trial judge may use such evidence to

10

adjust the jury verdict. "The <u>Manns</u> opinion established the rule that prior settlements should generally be excluded from evidence at trial but that the trial court should make a pro tanto adjustment of any jury verdict in the amount of prior settlements." <u>Marquez v. Mayer</u>, 727 N.E.2d 768, 772-773 (Ind. App. 2000). Lake Erie and the Pension Fund dispute whether the funds should be treated as a settlement award or an insurance payment, but either way, the evidence should not be admitted at trial.  The Pension Fund's motion is, therefore, granted.

### III. CONCLUSION

For the reasons set forth above, BCLLC's Motion for Summary Judgment (Doc. No. 360) and the Pension Fund's Motion for Summary Judgment (Doc. No. 361) are GRANTED in part and DENIED in part.

SO ORDERED.

ENTERED:   January 8, 2007

           /s/ Robert L. Miller, Jr.
           Chief Judge
           United States District Court